UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

PATRICK DOODY,

                                        Plaintiff,

v.                                                                     1:05-CV-1226
                                                                       (GHL)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

_____

APPEARANCES:                                        OF COUNSEL:

OFFICE OF STEPHEN J. MASTAITIS, JR.          STEPHEN J. MASTAITIS, JR., ESQ.
Counsel for Plaintiff
1412 Route 9P
Saratoga Springs, New York 12866

HON. GLENN T. SUDDABY                        WILLIAM H. PEASE, ESQ.
United States Attorney for the               Assistant U.S. Attorney
        Northern District of New York
Counsel for Defendant
100 S. Clinton Street
Syracuse, New York 13261-7198

GEORGE H. LOWE, United States Magistrate Judge

### MEMORANDUM DECISION AND ORDER[1]

I.      BACKGROUND

        A.      Procedural History

        Plaintiff applied for disability insurance benefits on January 15, 2002. (Administrative

Transcript ("T") at 43-45.)  The application was denied (T. at 22-24) and Plaintiff requested a

hearing before an Administrative Law Judge ("ALJ").  (T. at 25.)  The hearing was held on

_____

[1]        This matter is before the Court by consent of both parties.  (Dkt. No.16.)

September 8, 2003.  (T. at 363-439.)  On January 30, 2004, the ALJ issued a decision finding

that Plaintiff was not disabled.  (T. at 8-18.)  The ALJ's decision became the final decision of the

Commissioner when the Appeals Council denied Plaintiff's request for review on July 27, 2005.

(T. at 3-5.)  Plaintiff commenced this action on September 27, 2005. (Dkt. No. 1.)

### B.      The Contentions

Plaintiff makes the following claims:

(1)      The ALJ did not properly consider Plaintiff's nonexertional limitations when

determining Plaintiff's residual functional capacity ("RFC").  (Dkt. No.11 at 7-8[2].)

(2)      The ALJ did not give appropriate weight to the opinion of examining psychologist

Annette Payne, Ph.D.  (Dkt. No. 11 at 8-9.)

(3)      The ALJ erred by finding that Plaintiff's school attendance indicated that he was

able to do the sedentary jobs identified by the Vocational Expert ("VE").   (Dkt. No. 11 at 10.)

(4)      The ALJ erred by giving insufficient weight to Plaintiff's testimony (Dkt. No. 11

at 10-14.)

(5)      The ALJ's decision is flawed because his questions to the VE did not incorporate

all of Plaintiff's limitations.   (Dkt. No. 11 at 9.)[3]

Defendant contends that the ALJ's decision is supported by substantial evidence and thus

should be affirmed.  (Dkt. No. 14.)

---

[2]      Plaintiff's counsel failed to paginate his brief in compliance with Local Rule 10.1(a).

[3]      The Court has merged these contentions in the body of the discussion.  The Court notes that the "Statement of the Issues" section of Plaintiff's brief asserts that the ALJ erred by not finding that Plaintiff's impairments met or equaled an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 .  However, Plaintiff's brief does not address that topic.   Accordingly, the Court has not analyzed that issue.

## II.    APPLICABLE LAW

### A.    Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI

disability benefits must establish that he is "unable to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2004).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)),

the Social Security Administration ("SSA") promulgated regulations establishing a five-step

sequential evaluation process to determine disability.  20 C.F.R. § 416.920 (2007).  "If at any step

a finding of disability or non-disability can be made, the SSA will not review the claim further."

*Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the
> claimant shows that he is not working at a "substantial gainful
> activity."  [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two,
> the SSA will find non-disability unless the claimant shows that he
> has a "severe impairment," defined as "any impairment or
> combination of impairments which significantly limits [the
> claimant's] physical or mental ability to do basic work activities."
> [20 C.F.R.] §§ 404.1520(c), 416.920(c).  At step three, the agency

> determines whether the impairment which enabled the claimant to
> survive step two is on the list of impairments presumed severe
> enough to render one disabled; if so, the claimant qualifies.  [20
> C.F.R. §§] 404.1520(d), 416.920(d).  If the claimant's impairment
> is not on the list, the inquiry proceeds to step four, at which the
> SSA assesses whether the claimant can do his previous work;
> unless he shows that he cannot, he is determined not to be disabled.
> If the claimant survives the fourth stage, the fifth, and final, step
> requires the SSA to consider so-called "vocational factors" (the
> claimant's age, education, and past work experience), and to
> determine whether the claimant is capable of performing other jobs
> existing in significant numbers in the national economy.  [20
> C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Serrano v.
Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003).  If the
plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the
defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs
which exist in significant numbers in the national economy.  *Id.* (citing *Barnhart v. Thomas*, 540
U.S. at 25; other citations omitted).

### B.      Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the
correct legal standards were applied and whether substantial evidence supports the decision.
*Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003);
*Serrano v. Barnhart*, 2003 WL 22683342, at *10; *Rosado v. Sullivan*, 805 F. Supp. 147, 153
(S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing
court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards
were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817

4

F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258.  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.    THE PLAINTIFF

Plaintiff was born on March 22, 1965.  (T. at 43.)   He completed high school.  (T. at 61, 112, 372.)  At the time of the hearing, he was attending community college classes full-time.  (T. at 372.)  Plaintiff has worked as a supervisor at a car dealership and as a mechanic.  He  has also

been self-employed selling pay phones.  (T. at 56, 374-379.)  Plaintiff alleges disability due to

loss of use in his hands, back injury, diabetes, depression, and a hole in his left ear drum.  (T. at

55.)

## IV.    THE ALJ'S DECISION

The ALJ found that Plaintiff (1) has not engaged in any substantial gainful activity since

May 15, 1999[4]; (2) suffers from the severe impairments of hypertension, diabetes, low back

disorder, affective disorder, chronic ear problems and bilateral hand problems; (3) does not

suffer from a Listings-level impairment; (4) does not have the RFC to perform his past relevant

work; (5) has the RFC to perform sedentary work with no repetitive reaching, handling, fingering

or feeling[5]; (6) is capable of performing the jobs of information clerk, telephone solicitor,

surveillance systems monitor, or order clerk; and (7) is not disabled.  (T. at 18.)

## V.    DISCUSSION

### A.    The ALJ Did Not Discuss His Determination Regarding Plaintiff's Credibility with Sufficient Specificity to Enable this Court to Decide Whether the Determination Is Supported by Substantial Evidence.

Plaintiff argues that the ALJ erred by implicitly finding that Plaintiff's testimony

regarding his subjective complaints was not credible.  (Dkt. No. 11 at 10-14.)   As discussed

below, remand is appropriate because the ALJ did not discuss his determination regarding

Plaintiff's credibility with sufficient specificity to enable this Court to decide whether the

---

[4]    The ALJ's decision is internally inconsistent regarding the date of Plaintiff's last substantial gainful activity.  In the body of his decision, the ALJ stated that Plaintiff "has not engaged in substantial gainful activity since November 2002."  (T. at 12.)  In the "Findings" section of his decision, the ALJ stated that Plaintiff "has not engaged in substantial gainful activity since May 15, 1999."  (T. at 18.)

[5]    Plaintiff does not argue that the ALJ's analysis of his physical impairments is flawed.  Rather, Plaintiff's brief focuses on the ALJ's treatment of the attention and concentration deficits Plaintiff suffers as a result of his depression, affective disorder, diabetes, and ear problems. (*See e.g.* Dkt. No. 11 at 7-8.)

determination is supported by substantial evidence.

The ALJ asked Plaintiff why he feels that he is disabled.  Plaintiff responded that:

> I ... have diabetes, a severely injured back.  I've had surgery done
> on both of my hands.  Now I just found out recently I got bone
> spurs on my shoulders that's going to need some sort of attention.
> And I've got a hole in my one eardrum and my other ear is going
> down the same road.  That would be an accumulation of all these
> things along with my mental state of mind, you know, which can
> be bad sometimes and better at others.

(T. at 379.)

Plaintiff testified that when his blood sugar is low, he experiences dizziness, spotted vision, heavy sweats, and faintness.  (T. at 379-380.)  "It can also cause me to have confusion and a loss of my ability to concentrate ... And on the other side of that coin, high blood sugar can cause be (sic) nauseous or vomit, a lack of energy, tired."  (T. at 380.)  Plaintiff testified that when his blood sugar is high, he has to use the bathroom four or five times during the day.  (T. at 405-406.)  Such days occur twelve or fifteen times a month.  (T. at 406.)

Plaintiff admitted that he "managed to work with diabetes in the past."  (T. at 381.) However, he testified that his "symptoms have been changing over the last few years as far as low blood sugar ... The confusion and the loss of the ability to concentrate ... It's hard to explain. It's like I lose my bearings and, you know, if I'm doing something, there's a task in front of me maybe, you know, I'll completely lose my place.  And until I go and have some orange juice or a candy bar or something and sit down for awhile and I'll let my sugar level catch back up, I mean I'm just - I can't get anything done."  (T. at 381-382.)  Plaintiff testified that the frequency of these episodes varies.  The episodes might  happen twice a day or three times a week.  Each episode lasts half an hour.  (T. at 382.)

7

Plaintiff testified that his ear problems also cause dizziness. "Sometimes it might not happen for a week and sometimes it might happen to me every day for a week." (T. at 391.) The dizzy spells happen between two and eight times per month. (T. at 406.) Usually the dizziness subsides after a minute. (T. at 392.) Sometimes it lasts for twenty minutes. (T. at 407.)

Plaintiff attends classes five days a week. (T. at 401.) He testified that he has " one class (that) is three hours long ... and ... I can't sit through that class. I got to get up and stretch and walk around for a little." (T. at 399.)

Although the decision does not state so explicitly, the ALJ apparently found that Plaintiff's testimony regarding his limitations was not credible.

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. § 404.1529 (2007); *see also Foster v. Callahan*, Civ. No. 96-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998) and SSR 96-7p. First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms. SSR 96-7p. This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms. *Id.* If no impairment is found that could reasonably be

expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities.  An individual's statements about his pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled.  *Id.*

However, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to evaluate the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities.  *Id.* A claimant's symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone.  *Id.*  When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors:  (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. § 404.1529(c)(3) (2007).

An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence.  *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 U.S. Dist. LEXIS 6988, at *29-*30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140,

147 (E.D.N.Y. 1999) and *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS 11595, at

*19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's

credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to

observe the claimant's testimony and demeanor at the hearing.")).

     Here, the ALJ did not discuss his determination regarding Plaintiff's credibility with

sufficient specificity to enable this Court to decide whether the determination is supported by

substantial evidence.  In his decision, the ALJ  stated that he "carefully considered the claimant's

testimony pursuant to 20 CFR 404.1529 and Social Security Ruling 96-7p."  (T. at 16.)

However, the decision does not even explicitly state whether or not the ALJ found Plaintiff

credible, much less apply the analysis discussed above.  The decision merely summarizes

Plaintiff's testimony and then moves on to the next topic.

     Later in the decision, the ALJ noted that  "claimant's acknowledged activities which

include full-time school indicate an ability to do the sedentary jobs identified by the vocational

expert."  (T. at 17.)    This may indicate that the ALJ found that Plaintiff's testimony regarding

his subjective complaints was not credible because Plaintiff is able to attend school.   If that was

the sole basis for the ALJ's implicit finding regarding Plaintiff's credibility, it was improper. *See*

*Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989)("When a disabled person gamely chooses to

endure pain in order to pursue important goals, it would be a shame to hold this endurance

against him in determining benefits unless his conduct truly showed that he is capable of

working"); *Ressegiue v. Secretary*, 425 F. Supp. 160, 164  (E.D.N.Y. 1977)("Attending school or

college does not necessarily establish the existence of the bodily conditions normally required for

the performance of 'substantial gainful activity' nor provide a sure criterion of the presence of

such capacity. To be entitled to benefits under the Act, "one need not be completely helpless or unable to function.")   Accordingly, remand is appropriate.

**B.      The ALJ Did Not Properly Consider Plaintiff's Mental Impairments.**

Plaintiff argues that the ALJ did not properly consider his mental impairments.  (Dkt. No. 11 at 7-9.)  Plaintiff is correct.  The ALJ did not apply the correct legal standards when considering Plaintiff's mental impairments.  In addition, the ALJ's factual findings regarding Plaintiff's mental impairments are not supported by substantial evidence.

ALJs are required to use

> a special technique at each step of the administrative review process when a claimant suffers from a mental impairment. At step two ... the ALJ must rate the degree of functional limitation resulting from the claimant's mental impairment(s) to determine whether they are "severe."  For this purpose, the claimant's limitations in four broad functional areas are rated along a five-point scale ranging from no limitation to extreme limitation. The four areas (often referred to as the "B criteria") are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. A ranking of no or "mild" limitation in all of these areas would generally warrant a finding that the claimant's mental impairments are not severe ... If the claimant is found to have a severe impairment not listed in the Appendix, then, at steps four and five, the ALJ must assess the claimant's mental RFC .

*Rosado v. Barnhart,*  290 F. Supp. 2d 431, 437 (S.D.N.Y. 2003)(citations omitted).

Here,  the only evidence in the record regarding Plaintiff's mental impairments is (1) a report by examining psychologist Annette Payne, Ph.D (T. at 159-162); and (2) a Psychiatric Review Technique Form and a Mental RFC Assessment Form completed by agency medical consultant Abdul Hameed, M.D.  (T. at 165-182.)

Dr. Payne  opined that Plaintiff "has problems with attention and concentration and

making appropriate decisions.  He has difficulties relating with others and dealing with the

normal stresses of a competitive workplace.  His current psychiatric difficulties are moderately to

severely limiting." (T. at 161.)  Dr. Payne opined that Plaintiff could follow and understand

simple directions and instructions and consistently perform simple rote tasks under supervision.

(T. at 161.)

The ALJ rejected Dr. Payne's opinion as not supported in the record.  (T. at 15.)  The

ALJ erred.  Nothing in the record contradicts Dr. Payne's opinion that Plaintiff has problems

with attention and concentration.  While Dr. Hameed found that Plaintiff had no limitations on

activities of daily living and only  mild limitations in maintaining social functioning, he

concurred with Dr. Payne that Plaintiff suffers moderate limitations in maintaining

concentration, persistence or pace.  (T. at 175.)

At step two, the ALJ found that Plaintiff has mild limitations in activities of daily living,

social  functioning, and concentration, persistence or pace.  (T. at 15.)  The ALJ found that

Plaintiff has not had any episodes of decompensation.  (T. at 15.)  The ALJ's finding regarding

concentration, persistence or pace is not supported by substantial evidence.  Both Dr. Payne and

Dr. Hameed found that Plaintiff had at least moderate limitations in that area.  As mentioned

above, their opinions are the only opinions in the record regarding Plaintiff's mental

impairments.  Plaintiff's testimony that he 'completely loses his place' and loses his ability to

concentrate when his blood sugar is low is consistent with this medical evidence.  (T. at 381-

382.)

The ALJ's decision compounded this factual error with legal error.  As discussed above,

the "mild"  rankings that the ALJ assigned to Plaintiff's limitations would  generally warrant a

finding at step two that Plaintiff's mental impairments are not severe.  *Rosado*, 290 F. Supp. 2d

at 437.  However, the ALJ's decision suggests that he found at step two that Plaintiff's affective

disorder *is* severe.  (T. at 14, 18.)

Having found that Plaintiff suffered from severe impairments, the ALJ found at step three

that none of Plaintiff's impairments met or equaled a listed impairment.  (T. at 14, 18.)  The ALJ

was thus required at steps four and five  to "assess the claimant's mental RFC."  *Rosado*, 290 F.

Supp. 2d. at 437.

The ALJ did not assess Plaintiff's mental RFC.  Use of the four B criteria to determine

whether a claimant's impairments are severe  "is not equivalent to a mental RFC assessment".

*Rosado*, 290 F. Supp. 2d at 441. Rather, a mental  RFC assessment requires consideration of an

expanded list of work-related capacities that may be affected by mental disorders when the

impairment(s) is severe but neither meets nor equals a listed mental disorder.  20 C.F.R. Pt. 404,

Subpt. P. App. 1 § 12.00(A).  For example, "(w)hen the question at the fifth step is whether the

claimant can be expected to perform unskilled work, the SSA regulations clarify that the basic

mental demands of  unskilled work include the abilities on a sustained basis to understand, carry

out, and remember simple instructions; to respond appropriately to supervision, coworkers, and

usual work situations; and to deal with changes in a routine work setting."  *Rosado*, 290 F. Supp.

2d at 437-438.

The ALJ's decision does not discuss Plaintiff's ability to perform work-related tasks.

The record shows that Plaintiff suffered some limitations in his ability to perform such tasks.  Dr.

Hameed found that Plaintiff's ability to understand, remember and carry out detailed instructions

and to maintain attention and concentration for extended periods was moderately limited.  (T. at

179.) As mentioned above, Dr. Payne opined that although Plaintiff could follow and understand simple directions and instructions and consistently perform simple rote tasks under supervision, he "has problems with attention and concentration and making appropriate decisions. He has difficulties relating with others and dealing with the normal stresses of a competitive workplace." (T. at 161.)

The ALJ's failure to properly assess Plaintiff's mental RFC tainted his questioning of the VE. When "a claimant's nonexertional impairments significantly diminish[6] (his or) her ability to work, the Commissioner should be required to present the testimony of a vocational expert or other evidence concerning the existence of jobs in the national economy for an individual with claimant's limitations." *Dwyer v. Apfel*, 23 F. Supp. 2d 223, 229-230 (N.D.N.Y. 1998). The ALJ should elicit testimony from the VE by posing hypothetical questions. The questions must "reflect the full extent of the claimant's capabilities and impairments." *Sanchez v. Barnhart,* 329 F. Supp. 2d 445, 449 (S.D.N.Y. 2004) A hypothetical question that "fails to reflect all of a claimant's impairments that are supported by the record ...cannot be considered substantial evidence." *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004).

Here, the ALJ elicited testimony from a VE by posing hypothetical questions. However, neither of the ALJ's hypothetical questions to the VE included limitations caused by Plaintiff's mental impairments. (T. at 419-422.)

Defendant argues that any errors in the ALJ's questioning of the VE were essentially harmless because "(t)wo of the four jobs identified by the vocational expert ... were unskilled

---

[6]     A claimant's work capacity is "significantly diminished" if there is an additional loss of work capacity that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

jobs - surveillance systems monitor and order clerk ... The limitations identified by Dr. Payne are

consistent with the requirements of unskilled work.  Specifically, Dr. Payne concluded that

Plaintiff could follow and understand simple directions and instructions and consistently perform

simple rote tasks under supervision." (Dkt. No. 14 at 14.)

As another court has cogently observed:

> (Although) unskilled work by definition involves little judgment to
> perform simple duties that can be learned on the job in a short period
> of time, ... a job may fit that description and still require the ability to
> concentrate. Thus (Plaintiff's) ability to "learn, understand,
> remember, and perform simple, rote tasks on a sustained basis" is not
> necessarily enough to perform the sorts of jobs mentioned by the VE.
> For example, monitoring security cameras, a job the VE said could
> be performed by someone with the limitations in the hypothetical
> question, is unskilled (as it requires little judgment and may be
> learned in a short period of time), but if someone in that job could not
> concentrate and pay attention to the monitors, his performance would
> almost certainly be deficient.

*Bielat v. Commissioner,*  267 F. Supp. 2d 698, 702 (E.D.Mich.2003)(citations omitted).

The ALJ did not properly consider Plaintiff's mental impairments.  The ALJ's rejection

of Dr. Payne's opinion and  his finding that Plaintiff's concentration, persistence and pace

abilities are only mildly limited is not supported by substantial evidence.  The ALJ  committed

legal error by improperly apply the "technique."  The ALJ's hypotheticals to the VE did not

incorporate all of Plaintiff's limitations and thus the VE's responses do not constitute substantial

evidence.  Accordingly, remand is appropriate.

**WHEREFORE,** it is hereby

**ORDERED**, that this matter be remanded to the Commissioner, pursuant to sentence

four of 42 U.S.C. § 405(g),[7] for further proceedings consistent with the above.

Dated: September 24, 2007
      Syracuse, New York

                                   George H. Lowe
                                   United States Magistrate Judge

---

[7]     Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).